Floyd G. KERN, Plaintiff,

v.

Wilbur J. COHEN, Secretary Health,
Education & Welfare, Defendant.

Civ. A. No. 68–C–89–A.

United States District Court
W. D. Virginia,
Abingdon Division.

Feb. 13, 1969.

James C. Roberson, Greear, Bowen, Mullins & Winston, Norton, Va., for plaintiff.

William C. Breckinridge, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before this court pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g) for a review of a final decision of the Secretary of Health, Education and Welfare. The final decision holds that Floyd G. Kern, the claimant, is not entitled to a period of disability, or to disability insurance benefits on an application filed on November 22, 1967. The decision, rendered by a hearing examiner on June 14, 1968, became final on July 15, 1968, when the Appeals Council denied the claimant's request for review.

Floyd G. Kern, filed an application for disability insurance benefits on November 22, 1967, with the alleged disability as follows, "I give out [and] not able to work. No definite disability that I know of." The application was denied initially and on reconsideration. The claimant was notified of these decisions by letters dated January 30, 1968, and March 8, 1968, respectively. Being dissatisfied with the determination, the claimant requested a hearing.

A hearing was conducted at Big Stone Gap, Virginia, on May 15, 1968. The claimant was the only person to testify. Various documents and medical reports were received into evidence. On June 14, 1968, the hearing examiner concluded that the claimant had failed to sustain the burden of proving by a preponderance of the credible evidence that his impairments, either singly or in combination, were of such severity as to prevent him from engaging in any substantial gainful activity on, or prior to September 30, 1965, the date the special earnings requirements were last met. Accordingly, the decision holds that the claimant is not entitled to a period of disability or disability insurance benefits under the provisions of sections 216(i) and 223, respectively of the Social Security Act, as amended.

A request for review of the hearing examiner's decision was denied by the Appeals Council on July 15, 1968. The claimant filed his action in this court, pursuant to 42 U.S.C.A. § 405(g), on September 9, 1968, seeking judicial review of the "final" decision of the Secretary.

The facts are these. The claimant was born December 13, 1928, in Splashtown, Virginia. Possessor of a fifth grade education, he has never married and at present lives with his father who has retired. The claimant testified that he has no income except for some spending money that his sister sends him from time to time.

The claimant has had a number of jobs, most of them consisting of manual labor. He has worked as a coal loader in the coal mines for six years; as a laborer for a construction company for several months; as a part-time service station attendant; as a shipping clerk helper in Buffalo, New York, for six months, as a helper for drillers who were drilling for natural gas in Virginia; as a spot welder in a small electrical appliance company in San Diego, California, for nine months; as a slate picker for a coal mining company for fifteen months; as a janitor for a county school system in Northern Virginia for a week; and, as a jackhammer operator for the highway department in Fairfax County, Virginia for a week. The job with the highway department was terminated as a result of a car accident on May 21, 1965, which caused injuries to the claimant.

As a result of the car accident the claimant suffered complete destruction of the right elbow. The bony fragments were so splintered that no repair could be done. After the endema and the wound healed, a posterior splint was applied and the arm was fixed in 100 degree flexion in order to give the best functional result. A letter from Dr. J. K. Maloy, an orthopedic consultant, to the Virginia

State Department of vocational Rehabilitation contains the following information: the claimant was treated for many months at the Appalachian Regional Hospital at Wise for a comminuted displaced fracture of the right elbow with development of osteomyelitis. The most recent drainage, which was treated, was January 4, 1966. The claimant stated to Dr. Maloy that recently he had accidentally put full weight on the hand transmitted through the elbow. This had loosened the joint somewhat and caused a recurrence of pain. However, the examination conducted by Dr. Maloy on April 12, 1966 showed no drainage, a well healed wound olecranon (curved process of the ulna at the elbow) region of the right elbow, a good pulse in the wrist, full finger motion, slight limitation of dorsoflexion at the wrist and full shoulder motion. The diagnosis was: Ankylosis of the right elbow with quiescent osteomyelitis due to trauma. The letter concluded with the following paragraph:

This man has done very well considering the severity of his injury. I believe that he can carry out light and moderate types of work. Exceptional strenuous activity [sic] such as handling 100 pounds of weight, I believe, should not be done. He will have permanent loss of motion in the elbow and no surgical procedure will be of help to restore it. I do not believe that any treatment is needed at this time.

The record contains a medical report by Dr. N. C. Ratliff, a general practitioner in Clintwood, Virginia, which diagnosed the claimant's condition as: 1. Fixation of right elbow joint at 70 degrees due to complication following old accident, and 2. Chronic anxiety. The report is dated January 4, 1968, although apparently the examination of the claimant was performed in August, 1965.

The record also contains reports while the claimant was being treated for the elbow injury as an out-patient at the Appalachian Regional Hospital. They indicate that there was some drainage due to the injured elbow, but that it subsided with treatment and penicillin.

Aside from the injury to the elbow, there is no evidence of a medical nature to indicate an impairment. The claimant has not worked since May 21, 1965. He stays around his father's house the greater part of his time, carries water and does light chores such as mopping and scrubbing. He tends a small vegetable garden, has a driver's permit and can drive a car. He stated that he feels all right except when he tries to work.

There is also included in the record several reports of disability interviews, and also the claimant's earnings records which establish September 30, 1965, as the date on which the claimant last met the special earnings requirements.

█ The claimant has the burden of proving that he was under a disability as defined by the Act. 42 U.S.C.A. § 416 (i), Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962), and the Secretary does not have the burden of making an initial showing of non-disability. King v. Gardner, 370 F.2d 652 (6th Cir. 1967); Justice v. Gardner, 360 F.2d 998 (6th Cir. 1966). To be disabled within the meaning of the Social Security Act the claimant must show an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C.A. § 423(d) (1) (A). Since the claimant last met the special insured status requirements through September 30, 1965, he must establish that he was under a "disability" from a time on or prior to that date in order to be entitled to a period of disability or disability insurance benefits under section 216(i), 42 U.S.C.A. § 416(i), and section 223 of the Act, 42 U.S.C.A. § 423.

█ Although it is obvious that the claimant has suffered a severe injury to his right elbow, the medical evidence indicates that the severity was not suffi-

---

cient to prevent the claimant from engaging in any substantial gainful activity for a period of not less than 12 months on or prior to September 30, 1965, the date the special earnings requirements were last met. In April, 1966, eleven months after the car accident, Dr. Maloy, an orthopedic consultant, after examining the claimant, suggested that the claimant could return to performing light and moderate types of work, although exceptional strenuous activity such as lifting 100 pounds of weight, should not be done. The other medical reports do not show that the claimant is suffering any other impairments. The claimant did not specify any impairments in his application and explained at the hearing that he cannot work today because "Well, I can't hold out. I don't feel like I can hold out."

Although the claimant may not be able to perform some of the heavier types of manual labor that he has in the past, the hearing examiner noted that the claimant had experience in performing jobs of a light or moderate nature. These jobs, all of which the claimant testified that he has performed, are a spot welder of small electrical appliances, a janitor, a shipping clerk helper, or a service station attendant. The hearing examiner concluded that these activities appear to be well within the claimant's residual physical capabilities. Where one retains the capacity to do his former work, he is not disabled within the meaning of the Social Security Act. Brown v. Celebrezze, 347 F.2d 227 (4th Cir. 1965); Frankum v. Celebrezze, 343 F.2d 426 (4th Cir. 1965). The court notes that the claimant's last job with the highway department was located at some distance from where he now resides, and although he may not be able to return to his immediate former work, the janitorial work of a lighter nature was located in the same area. It is further noted that the claimant has performed light and moderate type work in regions such as New York, California, and Virginia and thus in his individual case he has shown that nobility is no great difficulty.

From a careful review of the administrative records and the briefs of counsel we find that the decision of the Secretary is supported by substantial evidence.

Accordingly, in view of the record as a whole, we think a reasonable mind could very well have reached the same conclusion as did the Secretary—that the evidence failed to establish the claim asserted, and that being so, the defendant's motion for a summary judgment must be granted and the plaintiff's motion denied.

The clerk is directed to send a certified copy of this opinion and judgment to counsel of record.