**Lucille G. TADDEO, Plaintiff,**

v.

**Elliot L. RICHARDSON, Secretary of the Department of Health, Education and Welfare, United States of America, Defendant.**

Civ. No. 72–92–F.

United States District Court,
C. D. California

Nov. 29, 1972.

Hunsdon Cary Stewart, Los Angeles, Cal., for plaintiff.

William D. Keller, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civil Div., Rex Heeseman, Asst. U. S. Atty., for defendant.

## MEMORANDUM OPINION

FERGUSON, District Judge.

Plaintiff brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (hereinafter "the Act"), to review a final decision of the Secretary of Health, Education and Welfare denying her a period of disability and disability insurance benefits under sections 216(i) and 223 of the Act, 42 U.S.C. §§ 416(i), 423. Defendant has filed a motion for summary judgment requesting affirmance of his determination, and plaintiff has filed a cross-motion for summary judgment in her favor.

The court has this date signed formal findings of fact and conclusions of law which were prepared by plaintiff's counsel. The court, by its signature, has adopted those findings and conclusions. However, they do not set forth in detail the court's reasoning as to why judgment should be granted in favor of the plaintiff. This memorandum opinion, therefore, supplements the formal findings, and pursuant to Rule 52 of the Federal Rules of Civil Procedure shall constitute additional findings of fact and conclusions of law.

The findings of the Secretary are conclusive if they are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). After reviewing the record, the court has concluded that the findings of the Secretary are not supported by substantial evidence and that the plaintiff has met her burden of proving that she was under a disability. The court accordingly grants the plaintiff's cross-motion for summary judgment and denies the motion of the defendant.

In order to prevail, plaintiff must prove that she suffered from an

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A).

The impairment must have resulted from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques," 42 U.S.C. § 423(d)(3), and must be

"of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work . . . ." 42 U.S.C. § 423(d)(2)(A).

The plaintiff's burden does not extend to proving that she is entitled to benefits beyond a reasonable doubt, but

"[i]f the claimant shows that because of [her] impairments [she] can no longer engage in [her] past occupation nor has experience or training for any other type of work, then [she] has met [her] burden. The Secretary must then show by substantial evidence what employment opportunities are available to a person with the limited capabilities of the claimant before the claim for disability benefits can properly be denied." Silcox v. Richardson, 331 F.Supp. 460, 465 (W.D. Va. 1971); see also Seitz v. Secretary of Social Security Administration, 317 F.2d 743, 744 (9th Cir. 1963).

Prior to her claim of disability, plaintiff had worked as a packer for a toy manufacturer.

The period in question, during which plaintiff was eligible to receive disability benefits if in fact she was disabled within the meaning of the Act, is July 15, 1961, through June 30, 1966.

The defendant contends initially that (1) plaintiff's mental condition did not become severe until 1968, and until that time she carried on normal social activities and was able to leave her home without difficulty; and (2) the evidence merely indicates that the plaintiff suffered from "emotional disturbances" which could be characterized as "anxiety" or "psychoneurosis" not severe enough to qualify as a "disability" within the meaning of the Act.

While there is evidence indicating that plaintiff's mental condition became "radically . . . worse" in 1968 (R. 31–32), it is clear that there is substantial evidence to support the conclusion that even before 1968, and specifically between 1961 and 1966, plaintiff's mental condition was severe enough to render her unable to engage in any substantial gainful activity. Moreover, the court finds that her mental illness, whether characterized as "anxiety" or something more, was of sufficient severity to constitute a "disability" within the meaning of the Act.

Of major importance is the August 16, 1971, letter of Dr. Weiss, an internist who was plaintiff's attending physician during the period in question. At the time the hearing before the Hearing Examiner was held, and at the time the Examiner's record was closed, this letter had not yet been received; only two earlier letters from Dr. Weiss, which were not specific as to plaintiff's condition from 1961–66, had been submitted. Plaintiff's husband had tried to obtain a more specific letter from Dr. Weiss but had been unable to do so. (R. 33–35, 63, 66, 83.) The August 16 letter was, however, made a part of the record in the review proceedings of the Appeals Council, which upheld the Hearing Examiner's findings. (R. 5.) Dr. Weiss's letter states that he saw her one to four times monthly from 1961 to 1968, and that during this period

"[s]he was suffering from . . . severe anxiety syndrome which made her completely disabled. Many times she was on the verge of mental breakdown. . . . This patient had a severe menopausal syndrome and could not work during this period." (R. 83.)

It was thus the opinion of her personal physician that she could not work from 1961 to 1968 due in large part to her "severe anxiety syndrome."

A psychiatric evaluation of plaintiff was made by Dr. Granzow in 1963. (R. 78.) This evaluation states that plaintiff suffered from an acute anxiety dating from 1957 or 1958, when plaintiff was separated from her ill mother. Her anxiety was of such severity that it "makes it impossible for her to go anywhere. She can only stay at home or go places with her confidant, the woman who accompanied her to this clinic."

A hospital intake interviewer in 1963 noted the presence of "fears incapacitating [plaintiff] to the point that it is very difficult for her to leave the house," and concluded that "[plaintiff's] mental deficiency would preclude her productive participation in a group." (R. 80, 82.)

The court finds that plaintiff has met her burden of proving that during the period in question she was under a disability within the meaning of the Act, due to her suffering from a mental disorder of such severity that she was unable to go out of her apartment, even for one block, without breaking out into a cold sweat and suffering severe anxiety and fear.

The cases cited by the defendant in support of his contention that plaintiff's mental condition does not qualify for benefits are readily distinguishable from the instant case. They are either distinguishable on the facts (*i. e.*, the nature

of the plaintiff's disabling condition was substantially different), or there was substantial evidence for the Secretary's findings in the testimony or reports of expert witnesses. For example, in Gum v. Secretary of Department of Health, Education and Welfare, 341 F.Supp. 611, 612 (D. Md. 1972), the court based its decision upholding the Secretary's determination on evidence that the plaintiff "seems to enjoy a number of non-stressing activities such as shopping, taking his child to school and doing some household chores," and on the opinion of one psychiatrist that he "would not see this patient as being psychiatrically disabled . . . ." In the instant case, the evidence establishes that plaintiff's mental disorder was so severe that she was virtually unable to leave her home. In Ragan v. Finch, 435 F.2d 239, 241 (6th Cir. 1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1685, 29 L.Ed.2d 152 (1971), cited by the defendant for the proposition that anxiety, without more, will not prevent a person from engaging in substantial gainful activity within the meaning of the Act, the court based its ruling on a finding that

> "[t]here was general agreement among the medical experts that as of September 30, 1961, Miss Ragan should have been able to return to full-time employment. She did not do so. One expert stated positively that her problems with nervousness would not have precluded her from working full time."

In the present case, by contrast, the medical reports indicate that plaintiff was unable to work during the period in question.

Other cases lend support to plaintiff's position. For example, in Wise v. Richardson, 330 F.Supp. 412 (M.D.N.C. 1971), the testimony of the claimant, along with the opinion of her family doctor that she was physically unable to engage in substantial gainful employment, was sufficient to establish that she was entitled to disability benefits. The court in Pollard v. Gardner, 267 F.

Supp. 890, 905–906 (W.D. Mo. 1967), noted that the plaintiff need not be totally disabled to qualify for benefits, and that it is sufficient that the plaintiff be unable to enter into *substantial* gainful activity despite being able to enter into *some* gainful activity.

■ The defendant's final argument is that the plaintiff's claimed disability was not established by means of "medically acceptable clinical . . . diagnostic techniques," as required by section 223(d)(3) of the Act, 42 U.S.C. § 423(d)(3), and that Dr. Granzow's diagnosis of an "inadequate personality" (R. 78) should be interpreted as controverting plaintiff's evidence. It is apparent that it may be more difficult to meet the plaintiff's burden of proof in a case where a mental disability, rather than a physical one, must be proven. The diagnostic techniques used to determine a psychological condition are necessarily less precise than those used to determine a physical one. It appears to the court, however, that the combination of the August letter from her regular attending physician, plus the psychiatric report and the intake interview, do constitute evidence based on "medically acceptable" techniques. Moreover, Dr. Granzow's evaluation, when viewed in its entirety, supports the plaintiff's position.

The defendant attaches importance to the fact that plaintiff did not follow up on Dr. Granzow's suggestion that she pay regular visits to a medical clinic. This behavior, however, is consistent with plaintiff's extreme fear of leaving the house.

Since the court has found that the findings of the defendant are not supported by substantial evidence, and that plaintiff has met her burden of proving that she was disabled within the meaning of the Act over the period in question, the defendant's motion for summary judgment is denied, and plaintiff's cross-motion for summary judgment is granted.